**UNITED STATES, Appellee,**

v.

**Staff Sergeant (E-6) William JACKSON, SSN 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, United States Army, Appellant.**

**CM 438258.**

U. S. Army Court of Military Review.

31 Oct. 1979.

---

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Allan T. Downen, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Major Robert B. Williams, JAGC, and Captain Lawrence W. Fitting, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and GARN, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Senior Judge:

The issue in this case is whether the victim LTC L was "in the execution of his office" at the time he was assaulted by appellant. We hold that he was and affirm.

Appellant was convicted of assault upon a superior commissioned officer in the execution of his office and communicating a threat in violation of Articles 90 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890 and 934, respectively. The convening authority approved the sentence adjudged by the court members, confinement at hard labor for four years.

In June of 1978 a biracial incident occurred in the battalion commanded by LTC L. After an investigation, those who were identified as being involved were punished under Article 15, UCMJ, 10 U.S.C. § 815. LTC L was subsequently advised by his race relations NCO that appellant, a race relations NCO in another command, had made a statement in a race relations meeting that nothing had been done about the racial incident in LTC L's command, that the "KKK" was involved in the episode and that there was a cover-up being conducted. LTC L then wrote a letter to the community commander, a general officer, asking him to relieve appellant from his duties. Two months later appellant, by appointment, met with LTC L to discuss LTC L's writing of the letter which had led to appellant being in fact relieved of his duties. The meeting was conducted on a professional basis and although appellant was distressed, there were no threats or discernible display of disrespect.

About two months later LTC L was at his quarters dressing for a formal military ball when appellant came to his door. Appellant smelled of alcohol, used vulgar language, and accused LTC L of ruining his life. The officer had stepped outside and was discussing the matter with appellant when appellant, without warning, punched the commander in the nose breaking it and requiring corrective surgery. A neighbor subdued appellant who angrily threatened to "get" LTC L.

Prior to the entry of pleas, appellant moved to strike that portion of the charge which alleged that the victim was in the execution of his office at the time of the assault. Trial counsel resisted the motion on the theory that LTC L was in the execution of his office because he was preparing to take a bus-load of his officers to the dress ball. The trial judge denied the motion. Appellant renewed his motion after both sides had rested but his motion was again denied.

Paragraph 169a, Manual for Courts-Martial, United States, 1969 (Revised edition) states:

An officer is in the execution of his office when engaged in any act or service required or authorized to be done by him by statute, regulation, the order of a superior, or military usage. In general, any striking or use of violence against any superior officer by a person subject to military law, over whom it is the duty of that superior officer to maintain discipline *at the time*, would be striking or using violence against him in the execution of his office. The commanding officer on board a ship or the commanding officer of a unit in the field is generally considered to be on duty at all times. (Emphasis added.)

The phrase "in the execution of his office" is described in Winthrop, *Military Law and Precedents*, 2d Ed. (1920 Reprint) p. 571 as follows:

This term has sometimes been defined by the more familiar expression, 'on duty'. But an officer may be in the execution of his office without being on duty in the strictly military sense, and a more accurate definition of the phrase is believed to be—in the performance of an act or duty either pertaining or incident to his office, or legal and appropriate for an officer of his rank and office to perform.

■ The question which must be answered here is whether LTC L, when he stepped outside his quarters and commenced discussing with appellant why he had sent the letter and why he thought it appropriate, was engaged in the performance of an act pertaining or incident to his office? We believe he was. Surely, when appellant and LTC L met earlier at the battalion office, the latter was engaged in the execution of his office and, had appellant assaulted him at that time, the violation would be obvious. The only material difference between the office meeting and the encounter at LTC L's quarters is that the infantry commander, strictly speaking, was not on duty at his quarters. But, as pointed out by *Winthrop, supra*, being "on duty" in a strictly military sense is not the test. LTC L's discussion with appellant outside his quarters pertained to and was incidental to his office

and was legal and appropriate. Additionally, by confronting LTC L in the manner and under the circumstances described above, the appellant put LTC L in the position of being responsible for appellant's discipline. We conclude, therefore, that LTC L was in the execution of his office at the time of the offense.

 Appellant also contends his sentence was inappropriately severe. We do not agree.

The findings of guilty and sentence are affirmed.

Judge GARN concurs.

Judge DRIBBEN did not participate.